Gonzalez v. the United States. Good morning, Your Honor. Andrew Feldman. Yes, Mr. Feldman, good morning. Andrew Feldman on behalf of the appellant, Jose Carlos Gonzalez. May it please the members of the panel, counsel for the government. Appellant is a Cuban national that faces imminent deportation from the United States based on the affirmative misadvice from his defense counsel regarding the consequences of a federal misdemeanor conviction. Incorrect advice, which was also provided by the district court at the same time. The magistrate judge in this case conducted a two-day evidentiary hearing with four witnesses to address the issues and issued a 30 page report and recommendation that Mr. Gonzalez's federal misdemeanor conviction be vacated on a violation of a Sixth Amendment right to effective assistance of counsel. Upon review, the district court rejected the opinion but did not reach the merits of the opinion and relied entirely on the approving sound reasons for delaying the petitions filing. The district court abused its discretion under United States v. Peter 310 Bed Third 709, case from this circuit, when it found that based on the record below, there were no findings that Mr. Carlos Gonzalez did not meet his burden of proof approving sound reasons for delay. Well, it seemed to me that the district court was undoubtedly right that the magistrate judge skipped this issue and analyzed it instead as a latches issue, which would be the government's burden to establish, and failed to decide whether your client had satisfied his burden of proving that his reasons for delay were sound. And the district court is free to review that that issue that that legal issue de novo. What am I missing? Your Honor is eminently correct in terms of the standard that the district court is entitled to apply the de novo review standard. But I would point your honors to a passage from the magistrate's 125, which is that in which Judge O'Sullivan, the magistrate judge states specifically the petitioner has the burden to show that the delay was justified and continues. But he didn't decide that issue. He said that, but he didn't decide it. He said that and then he went on to say the reasons that the delay was justified, saying that in March of 2016, less than a month after receiving the notice to appear, the petitioner promptly retained new immigration counsel. His new counsel attained a continuance of the initial October 16th hearing and hired a criminal defense attorney in March of 17. In August of 17, his new immigration counsel and his new defense counsel determined that attempting to vacate the conviction through a petition for quorum novus was the only remedy available. Approximately one year after receiving the hearing, the petitioner filed the petition for quorum novus on October 25th, 2017. He may not have uttered the precise words. From pages 29 and 30, it seemed to me that the magistrate judge turned to the analysis of latchings and determined that the government had failed to prove prejudice. And that's what it rested, that magistrate judge rested his decision on. No? I believe that the magistrate judge parsed those two, teased those things out in his opinion. Again, it might not have been perfectly done, but if you look at Appendix 114, when the magistrate is going through and sort of outlining what he's going to do, he groups sound reasons for delay separate and apart from latches, thus separating them into two distinct categories and even highlights them in the report and recommendation as two different categories. I believe that the magistrate approached and evaluated those issues separate and apart from each other and considered the latches defense and the lack of prejudice to the government only after going through the reasons he believed that the delay in his words was justified. So I believe there's a clear finding on the record that the burden of proving sound reasons for delay was satisfied. Let me ask you a question about the burden. It's clear that we look at the Coram Novus petition and the denial of that petition for abuse of discretion. But I want to ask sort of a subsidiary question about findings. Ought we not to be saying that a finding by a trial court that a petitioner did not show sound reasons for delay is one that we review only for clear error? Do I have that right? We've certainly said that in the context of 2255 applications. Shouldn't that same clear error standard of review apply on a petition where the issue in Coram Novus is whether there was due diligence or an unsound delay? I believe your honor should apply the abuse of discretion standard based on the Mills decision from the 11th circuit in 2000. I understand that we apply abuse of discretion to the question of whether or not the district court erred in granting or denying the Coram Novus petition. I'm asking a different question. I'm asking a question that goes to fact finding. If the trial judge finds as a fact that the petitioner did not show sound reasons for delay, are we not required to review that only for clear error? Wouldn't that subsidiary finding be a fact finding reviewed only for clear error? I don't believe so, your honor. Well, you understand that in the context of 2255 petitions, we have said, and I quote, that we review quote for clear error a district court's findings with regard to whether the petitioner exercised due diligence. We said that in a wrong of the United States in 2002. We cited some other case law coming out of the 7th circuit for that proposition, except my word for it, that's what we've said in 2255. I'm asking you, we haven't said that in the context of Coram Novus. My question to you is, why shouldn't we review the fact finding on due diligence in Coram Novus for the same clear error review? Well, they are two different types of post-conviction relief for sure, and your honor is correct. That is the standard that's been applied in 2255, but I believe that Coram Novus is a distinct form of writ. It's a distinct form of remedy, and under the circumstances, especially in this case, that applying the clear error standard is too difficult or too onerous of a standard that should be applied in this case. Well, it seems to me, Mr. Feldman, that the problem you have is that regardless of differences between 2255 and this extraordinary writ, that that's just the way an abuse of discretion standard works. There are legion cases that say that if the error of the district court is an error of law, we review that de novo, and that error constitutes an abuse of discretion. If the error, though, is one of fact, we review that for clear error, and if clearly erroneous, that is an abuse of discretion. Isn't that just the way the abuse of discretion standard works? I don't disagree with Judge Pryor, your summation of the standards. What I would say is that just to follow up on the clear error, if your honors were to apply the clear error standard to the judge's fact-finding in terms of whether or not the burden of proof of meeting sound reasons for delay was present or not, I still believe that the district court's order should be reversed based on the entire record, based on the magistrate court's report and recommendation. I think there was plenty in the record to show the steps that were taken in between February of 2016 until late August of 2017. This is not a case where a petitioner just sat on his rights. He had not one, not two, not three, but ultimately four lawyers that were representing him during this entire time. Why did he have to wait? Let's even assume we start the timing from the time that the notice to appear was filed. We're talking now February of 16. This record reflects that a period of 20 months expired before the Karamnovas petition was that a delay of 20 months here was not evidence of due diligence. Your honors, what I would say in response to that is that there has been no 11th Circuit or Southern District of Florida case that I have found in which a 20-month delay based on the factual circumstances in this case is a sufficient enough delay to basically invalidate the petition on timeliness issues. There's a host of cases cited by the government, many from out of circuit, many from out of district, that a lot of them deal with habeas, which has a one-year statute of limitations unlike Karamnovas, and none of them deal with the situation in which a client is represented throughout almost the entire time on a quasi pro bono basis by both criminal and earlier on immigration attorneys. I think that everyone, when I say everyone, all the attorneys were participating in this process over time to correct the fundamental miscarriage of justice, and it doesn't just dawn on petitioners or even practitioners, quite frankly, that all of a sudden the archaic and extraordinary writ of Karamnovas is something that they could use. Well, isn't it true though that at least part of the delay during that 20-month period was because of a tactical decision made by counsel? Isn't that really what was operating here, that they thought it would be tactically wiser to wait longer rather than file sooner, and if indeed that's the case, would that be a sound reason for delay, tactical advantage? I would say, first of all, that it was, you're talking about the February 16th, 2016 date when the notice of appearance was served. It was filed closer to the October of 2016 date when the hearing was actually scheduled, so that's an eight-month period, but in any event, but he knew he was in deep distress. The risks were screaming from all sides. Every warning light was flashing red when Homeland Security proceeded with filing a notice to appear for removal. He knew he was in deep distress at that point, didn't he? He knew that there was a possibility and only a possibility in February of 2016 that this case would actually proceed to an actual proceeding in which there would be a removal hearing. What did he suppose was the reason for Homeland Security to file the notice to appear and telling him specifically what the statutory basis was for the removal? Well, he's certainly on notice of the statutory basis in February of 2016. Whether he was on notice of actual consequences that stem from his misdemeanor conviction at that time, I do not believe so. No, I'm certain, but he certainly knew there was a real and substantial possibility that the government would actually seek to remove him. That's correct. Wouldn't that be a fair statement of what a reasonable person would understand from the NTA having been filed? That's correct, Your Honor, but if I could just quickly move because I only have 45 seconds here. No, you don't. You're four minutes over. I'll reserve the remainder of my argument for rebuttal. Okay, Ms. Hoffman. Good morning, Your Honors. Andrea Hoffman on behalf of the United States. The district court in this case properly found that Mr. Gonzalez had not established sound reasons for the 20-month delay in filing his Corum Novus petition. As Judge Marcus was just describing, this defendant was without question on notice in February of 2017 that to use the Supreme Court's language in the Johnson case that he had reasons to know that he had an interest in challenging a prior criminal conviction. He said that his attorneys thought it best not to challenge his conviction, the result of a great plea offer, until the United States changed its policy toward the deportation of Cubans and that that was basically a tactical reason. I think it is without question a tactical decision, Your Honor, in this particular circumstance. Is that what the does the record show that that's what they were thinking? Ms. McCoy said in the Corum Novus hearing, Your Honor, that they chose not to arm their defense, that they were waiting to see whether the petition would actually be proceeded with, i.e., that the government would prove the underlying causes that create the mandatory circumstances for removal, i.e., his earlier conviction, which is provable solely by proof of a copy of the judgment and conviction. So, that was a bizarre standard to take. She also said that, numerous times, that for a Cuban national, it was no big deal that this proceeding was occurring, that he could simply take a deportation order and it wouldn't matter. That is largely true still to this day, Your Honor, for this particular defendant, because although the wet foot, dry foot policy changed in 2017, it changed to only elicitate certain categories of defendants that would now be subject to removal. And this defendant, according to the pleadings in this case, does not meet those criteria. So, he is still in much the same condition that he was in in 2002 when he was warned six times. The district court, without question, said the conviction wasn't, I have a question about the practice of the United States government and the State Department. Isn't it true that even before the change in the wet foot, dry foot policy, that from time to time, the United States removed to Cuba and Cuba took back people on removal proceedings after they had been convicted of crimes here, even before the policy changed? Your Honor, I've done very little immigration work in my career. And to be honest, I have no idea if that is true. It would not surprise me that it might be possible that the governments, two governments had worked together to do that even prior to the wet foot, dry foot policy. It was a policy. So, it's possible there are exceptions. And I'm afraid I do not know. I can find out if the court would like to. In any event, there's nothing in the record about the issue. No, sir. There's nothing in the record about the issue. I have a question. I have a question about what a district court is supposed to do here and whether what the district court did was sufficient. I know we have ineffective assistance of counsel, but I'm also talking about the district court. I mean, the district court can't say, I know for sure you're going to be removed. You need to know that. Because then you'd move to vacate your plea if you didn't get removed. Say, I only plead because, you know, whatever. So, here the district court said there's a good chance or a possibility. And like you say, tried to tell the defendant. You need to be aware of that. Is there any problem with what the district court did here? Or is the problem the ineffective assistance? I don't believe that there is a problem with what the district court did when you put all of the factors in conjunction. As I started to say a moment ago, six times the district court warned the defendant that he was at risk of deportation. And three times the district court told him that it was not a decision that was within the district court's purview. That it was solely within INS, DHS now, whomever the correct agency is. Do we know under our case law if that if you're at risk of deportation? Under the Padilla decision, your honor, an attorney's obligation is to give advice if it is crystal clear what the advice is. But if it's unclear what the advice should be, then simply warning of the risk is sufficient in the language in Padilla itself, your honor. And we know, of course, that Padilla is not retroactive. So, that was a new announced in 2010. So, in 2002, do I believe that this court's conduct as a whole was correct? Yes. Because the wet foot, dry foot policy did, in fact, result in the legal consequences that the court described. Okay. Okay. You've answered my question. Thank you. In short, your honors, this court did not err or abuse its discretion. And I do agree with Judge Marcus that the question of factual findings is a determination of clear error. The court found plainly that this defendant had not met his burden to establish sound reasons and that his ignorance of the law or reliance upon attorneys was not a sufficient grounds either as a basis to determine that he had met his sound reasons for the 20-month lengthy delay in this case. One last statement that I would make if there are no other questions. Before you move off of that, I take it it is accurate to say, however, that we have never applied clear error to the due diligence findings by a trial court in the Coram Novus proceeding. No, this court has not. And I've only been able to find a single case in which this court has. The Peters case is a rare and unusual case for this court to have granted, affirmed the granting of a Coram Novus petition in that it was a circumstance where there was literally the district court lacked any jurisdiction to act because the changes in circumstances from the original conviction to the time of the Coram Novus petition invalidated the foundation for the court's even jurisdiction. Majority of the cases, this court has affirmed the denial of a petition of Coram Novus. It's an extraordinary remedy. And for example, 2255 opportunities are available to nearly every defendant in the system. Coram Novus is considerably narrower. And to envision that the rules would be broader doesn't square with the Supreme Court's statements that it can't even envision a circumstance in which Coram Novus would be a remedy necessary in federal criminal cases at this point in the Carlyle decision. I have one other question for you, Ms. Hoffman. If after receiving the notice to appear in February of 16 and after consulting with Mr. Soto one week later and retaining his services one month later, the petition for Coram Novus had been filed, would that have been a diligent exercise of his possibilities under Coram Novus? Would he have been diligent if he filed the Coram Novus in March of 16, in your view? The district court found that he had noticed at least as soon as February of 2016. Right, I'm asking a different question. No, I do understand, Your Honor. So if that were the date you were tracking from, a petition filed within one month of that, if somehow December, February 2016 was definitively the date to track from, then one month later, yes. The district court implied and certainly left open and the government has argued that there is an alternative remedy here. And this court's decision in Alconi states that the Coram Novus petition is not available if there is or was an alternative remedy. And the 2255 opportunities that this defendant had between 2002 and 2003 would have been sufficient grounds for the district court to also have denied this petition. So the district court could have found by, could be implying from its at least that it was even, it was untimely as of 2002. That's at least what you would be arguing in the event that he had filed in March of 2016. And the district court would have been obliged to maybe address that, which it did not. Correct, Your Honor. If there are no other questions, I would ask that this court affirm the district court's denial of the Coram Novus petition. Okay, thank you. Mr. Feldman, you have five minutes for rebuttal. Thank you, Your Honor. One of the problems with the framework which was being applied to look at the sound reasons for delay that is completely unique to this specific case is that we've been talking about when the petitioner was on notice of basically automatic deportability in February of 2016. Removal is always an easier word. I agree, Your Honor. And I want to at least address one thing that was just discussed by his counsel during the plea colloquy. And he was affirmatively misadvised by the district court as well, because the district court said, I do not believe it is included in the mandatory removal proceedings provided by Congress. That's an incorrect statement of the law. No, that's a statement of fact. I mean, the district court said he didn't believe that it might subject him to removal. Isn't that right? That's correct. But the problem is that it's an aggravated felony for immigration purposes. Yeah. And the district court said, I don't think this, what he's saying is the district court is saying, I don't believe this is, but you need to be aware of this. Right? Okay. So I'll move on. The sound reasons for delay piece of this, the petitioner is represented by counsel almost the entire time from February of 2016 until the, until the filing and still is today, obviously. In all these other cases dealing with sound reasons for delay, where they reject a quorum nobis petition because the petitioner sat on his rights, a lot of times it's because the petitioner hasn't found a lawyer or because he hasn't done anything to move the case along by finding a lawyer here. Even if there was a wait and see approach that was employed by his immigrant immigration counsel at first, he's never on notice of the fact that this remedy is even available to him. He's not on notice of that until essentially the time that my law firm is retained. And we do the, the legal research and weird archaic remedy to even determine that it's a possibility because he doesn't have habeas. He's not in custody. And so I think that's a critical fact that this, this client is represented by counsel the entire time. So while he's being represented by counsel, he's relying on the advice of counsel, whether it's to wait and see, or which I don't believe is actually what happened, but assuming it was, he's relying on the advice of counsel. He's taking directives from counsel. He, he is an unsophisticated litigant in the sense that he's, he's not a lawyer. He doesn't understand what quorum nobis is, and no one's even told him what that is. So if he were to file anytime between February in 2016, and essentially July of 2017, or excuse me, August or September of 2017, what is he going to file? He doesn't have the knowledge. He's not on notice of what his potential remedies are. And during this entire time, he has immigration lawyers and later on criminal lawyers that are looking at this and evaluating it. So I think that is a critical factual distinction in this case that separates it from every other case cited by the appellants and the appellees. And if there's nothing further from your honors, I would ask your honors to reverse the district court order and the conviction. Well, it mostly would just remand for further proceedings, right? Yes. Okay, Mr. Feldman, we understand your case and it's now submitted and we'll move on to the next one. Thank you. Thank you. Thank you, your honors. Thank you, Ms. Hoffman.